UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARCUS A. WORTHY,

                      **Plaintiff,**

v.

CITY OF BUFFALO, et al.,

                      **Defendants.**

11-CV-872A(Sr)

## DECISION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #6.

Plaintiff, Marcus A. Worthy, commenced this action alleging that his rights under the Fourth and Fourteenth Amendments to the United States Constitution and Title 42, United States Code, Section 1983 were violated by reason of the defendants' actions. Specifically, as against defendants Corey Krug, William Macy, Thomas Herbert, Joseph Paskiewicz, Melinda Jones and Brian Strobele, plaintiff asserts claims under Title 42, United States Code, Section 1983 for excessive force, false arrest, malicious prosecution and malicious abuse of process. As against defendant City of Buffalo, plaintiff asserts a single claim for municipal liability under Title 42, United States Code, Section 1983 and *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978). Presently pending is plaintiff's motion requesting an Order directing

that defendants Corey Krug, William Macy, Thomas Herbert, Joseph Paskiewicz, Melinda Jones and Brian Strobele reimburse plaintiff's expenses associated with service of process. Dkt. #8.

## BACKGROUND

Plaintiff, Marcus A. Worthy, alleges that on August 29, 2010 at approximately 10:30 p.m., he was standing and speaking with an acquaintance on private property, the porch outside 52 Langmeyer Street, Buffalo, New York. Dkt. #1, ¶ 10. At the time, plaintiff alleges that he was a security-guard trainee in possession of a valid pistol permit, had just completed a firearms training course and was wearing his licensed firearm in its holster. *Id*. at ¶ 11. The complaint alleges, upon information and belief, that the City of Buffalo Police Department had just received a call earlier that evening concerning a domestic dispute at a nearby location where an individual had brandished a sword. *Id*. at ¶ 12. At approximately 10:40 p.m., defendants Krug, Macy, Herbert, Paskiewicz and Jones arrived at 52 Langmeyer Street and began to run towards plaintiff with guns drawn. *Id*. at ¶¶ 13 and 14. Thereafter, the complaint alleges,

> 15. Plaintiff heard those Defendants shout something, but before he could decipher what they were saying, those Defendants struck Plaintiff in the back, causing him to fall forward. Defendants then seized Plaintiff's arms and head, held down Plaintiff's head, and cuffed Plaintiff's hands behind his back.
>
> 16. At this point, Defendants realized that Plaintiff had a gun. Plaintiff attempted to lift his head to speak to

> Defendants, and stated that he had a permit for the gun in his car, which was parked on the street in front of the house.
>
> 17. In response, Defendant Krug beat Plaintiff in the back of the head with Defendant Krug's police department-issued metal flashlight.
>
> 18. Defendant Krug administered several blows with his metal flashlight, causing severe swelling and bleeding to Plaintiff's head and causing Plaintiff to feel dizzy. Plaintiff was handcuffed behind his back at the time each such blow was administered.
>
> 19. After Plaintiff fell over the back of the police car [sic] under the force of the blows administered by Defendant Krug with his metal flashlight, Defendant Herbert removed Plaintiff's firearm from its holster and seized it.
>
> 20. Defendants Krug, Herbert, Macy, and Paskiewicz then proceeded to walk Plaintiff to a police cruiser and deposit him in the back seat thereof.
>
> 21. During the aforementioned excessive use of force and unlawful arrest of Plaintiff, Defendant Jones looked on and silently approved.
>
> 22. After Plaintiff was deposited in the police cruiser, Defendants searched Plaintiff's car, locating a valid pistol permit, a valid license for the seized pistol, and documentation of Plaintiff's completion of firearms and other security guard training courses.

Dkt. #1, ¶¶ 15-22. Plaintiff's complaint further alleges that defendants Krug, Herbert, Macy, Paskiewicz and Jones conspired to cover up their unlawful use of force and arrest of plaintiff by bringing false criminal charges of resisting arrest and obstructing governmental administration. Ultimately, the six charges were presented to an Erie County Grand Jury and the Grand Jury voted to dismiss all six charges against the plaintiff.

The plaintiff asserts the following claims pursuant to Title 42, United States Code, Section 1983: excessive force [Count 1] against defendants Krug, Herbert, Macy, Paskiewicz and Jones; municipal liability [Count 2] against the City of Buffalo; false arrest [Count 3] against defendants Krug, Herbert, Macy, Paskiewicz and Jones; malicious prosecution [Count 4] against Krug, Herbert, Macy, Paskiewicz, Jones and Strobele; and, malicious abuse of process [Count 5] against Krug, Herbert, Macy, Paskiewicz, Jones and Strobele. In addition, plaintiff seeks punitive damages against defendants Krug, Herbert, Macy, Paskiewicz, Jones and Strobele for their conduct.

In the instant motion, counsel for plaintiff details his efforts concerning obtaining a waiver of service from Assistant Corporation Counsel of the City of Buffalo Law Department. Dkt. #8-1. Specifically, plaintiff's counsel states that after commencing this action on October 18, 2011, on October 20, 2011, he spoke by phone to the Assistant Corporation Counsel at the City of Buffalo Law Department with whom he had had a "pre-suit" of plaintiff's claim on July 28, 2011. Dkt. #8-1, ¶ 3. Specifically, plaintiff's counsel advised the Assistant Corporation Counsel that the lawsuit had been filed and inquired whether he would be willing to accept service of process on behalf of the individual defendants or waive service under Federal Rule of Civil Procedure 4. *Id*. at ¶ 4. Further, plaintiff's counsel advised the Assistant Corporation Counsel that if he did not agree to accept or waive service, that he would serve Rule 4 waivers and that should service not be waived, he would file a motion seeking repayment of the costs of formal service. *Id*. Thereafter, plaintiff's counsel was advised that the Assistant Corporation Counsel could not accept service on behalf of the individual defendants

"because the City would not make a determination whether its Law Department could represent those defendants until after the Defendants had received copies of the complaint and forwarded them to the Law Department with a formal request for representation." *Id*.

Plaintiff's counsel's affidavit details that on November 23, 2011, plaintiff's counsel,

> sent mailings each consisting of a "Notice of Lawsuit and Request to Waive Service of a Summons" and copy of the Complaint herein, with two copies of a waiver form directed to Plaintiff's counsel, and a self-addressed, stamped envelopes addressed to Plaintiff's counsel, on Defendant Corey Krug by First Class United States Mail addressed to Mr. Krug at his residential address and on Defendants Melinda Jones, Brian Strobele, Joseph Paskiewicz, and Thomas Herbert by First Class United States Mail addressed to those Defendants at their business address (Buffalo Police Department, E-District, 2767 Bailey Avenue, Buffalo, New York 14215). The Notices and waiver forms mailed to those defendants are attached hereto as Exhibit A. None of the mailings sent to Defendant Krug's home address or Defendants Jones, Strobele, Paskiewicz, and Herbert's business address were ever returned by the United States Postal Service. The Notices and waiver forms were prepared on forms promulgated by the Administrative Office of United States Courts. The waiver forms contained a warning of the consequences of failing to waive service under Fed. R. Civ. P. 4.

*Id*. at ¶ 5. On December 8, 2011, plaintiff's counsel sent a similar notice, a copy of the Complaint, two copies of the waiver form and a self-addressed, stamped envelope to defendant Macy at his Buffalo Police Department business address. *Id*. at ¶ 6. In a telephone conversation on December 6, 2011, plaintiff's counsel informed Assistant Corporation Counsel that waiver notices had been served on all but one defendant and

-5-

that the remaining notice would be served shortly and that the summons and complaint had not been formally served, the defendants still had time to waive service. *Id*. at. ¶ 7. Indeed, plaintiff's counsel informed Assistant Corporation Counsel that defendants would have until January 7, 2012 to waive service. *Id*.

After the expiration of the time for the defendants to waive service, plaintiff's counsel describes in his affidavit that he contacted his investigator, Daniel Rivera, Intelligence and Investigative Solutions, Ltd., and directed him to begin making formal service of process on the defendants. *Id*. at ¶ 9. As detailed in his affidavit,

> Mr. Rivera completed substitute service on Defendant Krug at his home—the same address to which the waiver notice had been mailed—on February 2, 2012, by delivering the summons and complaint to Mr. Krug's wife and mailing a copy thereof to him at his home. Mr. Rivera located residential addresses for Defendants Strobele, Macy, Herbert, Paskiewicz, and Jones on January 30, 2012, by accessing an electronic database. Mr. Rivera served process personally on Mr. Herbert on January 31, 2012, and on Mr. Paskiewicz on February 2, 2012. Mr. Rivera served Mr. Strobele by substitute service on his wife and follow-up mailing to his residential address on January 31, 2012. Mr. Rivera also made three attempts to serve Ms. Jones and Mr. Macy at their residential addresses.

*Id*. at ¶ 9. A copy of Mr. Rivera's invoice was attached to plaintiff's motion as Exhibit C (Dkt. #8-4) and reveals that the total expense for the service of process on the individual defendants was $550.31.

On or about February 6, 2012, the City of Buffalo Law Department, without waiving personal service for any of the defendants, filed an Answer to the

Complaint on behalf of all defendants, including the individual defendants. *Id*. at ¶ 11 and Dkt. #4. By reason of the Answer filed on behalf of all defendants, completion of service on defendant Jones and Macy was now moot and plaintiff's counsel instructed his investigator to cease efforts to complete service. Dkt. #8-1 at ¶ 11. Thereafter, on February 23, 2012, plaintiff's counsel wrote to Assistant Corporation Counsel to request that defendants pay the expenses without the need for a formal motion pursuant to Federal Rule of Civil Procedure 4. *Id*. at ¶ 12. On March 5, 2012, Assistant Corporation Counsel advised plaintiff's counsel by phone that defendants refused to pay the expenses incurred in serving them after they failed to waive service because the obligation to avoid unnecessary costs of service pursuant to Federal Rule of Civil Procedure 4(d)(1) did not apply to them. *Id*. at ¶ 13.

By this motion, plaintiff's counsel seeks $1,135.31 as reimbursement for the costs associated with completing service of process on defendants and for the expenses, including attorney's fees, associated with making this motion. In their opposition, defendants maintain that plaintiff is not entitled to collect the cost of service, in part because plaintiff's complaint failed to put defendants on proper notice. Dkt. #11.

Rule 4(d)(1) of the Federal Rules of Criminal Procedure provides that, "[a]n individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of service the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons." Rule 4(d)(1)(A)-(G) also specifies certain

requirements that the notice and request must follow. Rule 4(d)(2) provides that if a defendant located within the United States fails, without good cause to sign and return the waiver, the Court must impose on the defendant the expenses incurred in making service and reasonable expenses, including attorney's fees associated in making a motion to collect the service expenses.

In their opposition to the instant motion, defendants rely on *Cupe v. Lantz*, 470 F.Supp.2d 136 (D. Conn. 2007). In *Cupe*, the Court found that "because plaintiff sought service waivers of defendants sued in their official capacities, who were not subject to the waiver of service provisions of Rule 4(d), plaintiffs' Motion to Collect Costs of Service of Summons and Complaint will be denied." 470 F.Supp.2d at 139. In so holding, the Court in *Cupe*, citing *Chapman v. N.Y. State Div. for Youth*, 227 F.R.D. 175, 179-80 (N.D.N.Y. 2005) quoted an excerpt from the Advisory Committee's Notes to the 1993 Amendment to Rule 4 as stating that, "for public policy reasons, neither governmental agencies nor their employees or officials are obligated to comply with a request for waiver nor will they be confronted with bearing the costs of the service of process . . . In this respect, a state official sued in an 'official' capacity is not subjugated to this waiver of service mandate." *Id*.

In a similar case commenced by the same plaintiff's counsel herein and involving the same Assistant Corporation Counsel and even two identical defendants, the City of Buffalo and defendant Krug, United States Magistrate Judge Hugh B. Scott denied plaintiff's counsel's motion for the reimbursement of the costs and expenses for

completing service of process. In *Daniel Rashada v. City of Buffalo, Corey Krug and William Rezabek*, Case No. 11-CV-873A, in a Decision and Order filed on February 6, 2013, Magistrate Judge Scott found that "[t]he fact that the complaint in this case fails to state whether the defendants are being sued in their individual or official capacity unnecessarily causes confusion as to the nature of the action. Under the circumstances in this case, the defendants have demonstrated good cause to believe that they were being sued in their official capacity and that the waiver provisions of Rule 4(d) did not apply." *Rashada v. City of Buffalo, et al.*, No. 11-CV-873A, 2013 WL 474751, at *4 (W.D.N.Y. Feb. 6, 2013).

Here, not unlike the circumstances presented in the case before Magistrate Judge Scott, the plaintiff's complaint does not state whether the individual defendants are being sued in their individual or official capacity. Indeed, as Judge Scott concluded in *Rashada*,

> It would appear that the plaintiff has asserted some claims that may typically be alleged against defendants in both their individual and official capacity, such as claims under § 1983. Other claims, such as the plaintiff's punitive damages claim, could only be asserted against the defendants in their individual capacity. *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101 (2d. Cir.2006); *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257 (2d. Cir.1997). However, the plaintiff also includes a municipal liability claim under *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1977). Such a claim must be predicated upon the conduct of the individual defendants in their official capacities. *See Williams v. Davis*, 200 F.3d 538 (8th Cir.2000) interpreting *Monell* as holding that a § 1983 liability attaches to government officials acting in their official capacity only for constitutional

> deprivation resulting from execution of official policy or custom); *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509 (7th Cir.2007) (The liability of the Sheriff's Department and of the County is derivative of Thompson's official-capacity liability, and the official-capacity liability is subject to holding in *Monell* that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." ... In order to state a § 1983 claim against a municipality, the complaint must allege that an official policy or custom not only caused the constitutional violation, but was "the moving force" behind it.); *Popham v. City of Kennesaw*, 820 F.2d 1570 (11th Cir.1987) (Citing *Monell*, the Court found that although plaintiff sued defendants "in both their official and individual capacities, ... the jury found that the City did not authorize or ratify the acts of the four officers. That fact conclusively indicates that the defendants were found liable in their individual capacity only. Whereas personal-capacity suits impose liability directly on government officials for actions taken under color of state law, an official-capacity suit is in actuality a suit against the governmental entity itself.)

*Rashada v. City of Buffalo, et al.*, No. 11-CV-873A, 2013 WL 474751, at *3 (W.D.N.Y. Feb. 6, 2013).  Following the same reasoning employed by Magistrate Judge Scott in *Rashada*, this Court also concludes that plaintiff's complaint herein is ambiguous and appears to allege claims against the defendants both in their official and individual capacities.  Indeed, as discussed in defendants' opposition to the instant motion, "[t]he complaint outlines events that took place while the individuals were on duty and makes countless references throughout the document pertaining to and referring to the defendants' actions in their official capacities as officers of the Buffalo Police Department."  Dkt. #11, p.6.

Accordingly, for the foregoing reasons, plaintiff's motion for costs and fees associated with personal service upon the individual defendants is this case is denied.

**SO ORDERED.**

DATED:    Buffalo, New York
          February 26, 2013

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**